# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MONDANA NICKSOLAT,<br><br>   Movant,<br><br>   v.<br><br>U.S. DEPARTMENT OF<br>TRANSPORTATION,<br><br>   Respondent. | )<br>)<br>)<br>)<br>)<br>)  No. 17-mc-2198 (KBJ)<br>)<br>)<br>)<br>)<br>)<br>) |

## <u>MEMORANDUM OPINION AND ORDER</u>

Movant Mondana Nicksolat has filed a motion to quash an administrative subpoena that the U.S. Department of Transportation, Office of Inspector General ("DOT-OIG") issued to TD Bank for certain financial records pertaining to Nicksolat. Nicksolat's motion constitutes a standalone judicial proceeding under the customer-challenge provision of the Right to Financial Privacy Act of 1978 ("RFPA"), 12 U.S.C. §§ 3401–22. For the reasons explained fully below, Nicksolat's motion is **DENIED**, and the government may issue and enforce its subpoena.

## I.

Congress enacted the RFPA in 1978, following the Supreme Court's ruling in *United States v. Miller* that a bank customer has no protectable Fourth Amendment rights in the financial records of the bank that pertain to her. *See* 425 U.S. 435, 440–44 (1976). The RFPA "fill[s] the gap left by the ruling in *Miller*[,]" *SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 745 n.15 (1984), insofar as it "accords customers of banks and similar financial institutions certain rights to be notified of and to challenge in

court administrative subpoenas of financial records in the possession of the banks." *Id.*
at 745. In its core provision pertaining to administrative subpoenas, the RFPA provides
that a federal government entity may subpoena a bank to obtain financial records about
a bank's customer only if "there is reason to believe that the records sought are relevant
to a legitimate law enforcement inquiry[.]" 12 U.S.C. § 3405(1); *see also id.* § 3401(8)
(defining "law enforcement inquiry" as "a lawful investigation or official proceeding
inquiring into a violation of, or failure to comply with, any criminal or civil statute or
any regulation, rule, or order issued pursuant thereto"). Before obtaining customer
financial records pursuant to such a subpoena, the government must serve the subpoena
on the customer (or mail it to her last known address) along with a notice that "shall
state with reasonable specificity the nature of the law enforcement inquiry[.]" *Id.*
§ 3405(2).

   The RFPA also provides a mechanism by which a bank customer may challenge
an administrative subpoena issued to a bank before the bank gives the government her
financial records. Specifically, within 10 days of being served with the bank subpoena
(or within 14 days of its mailing), "a customer may file a motion to quash" in federal
district court. *Id.* § 3410(a); *see also id.* § 3410(e) (providing that a motion to quash as
provided in section 3410 is "the sole judicial remedy available to a customer to oppose
disclosure of financial records" pursuant to the RFPA). Along with the motion to quash
the administrative subpoena, the customer must include "an affidavit or sworn
statement" that "(1) stat[es] that the applicant is a customer of the financial institution
from which financial records pertaining to him have been sought; and (2) stat[es] the
applicant's reasons for believing that the financial records sought are not relevant to the

legitimate law enforcement inquiry stated by the Government authority in its notice, or that there has not been substantial compliance with the provisions of this chapter." *Id.* § 3410(a). If the customer challenges an administrative subpoena in court within the prescribed timeframe, then the government may not collect the subpoenaed records from the financial institution while the challenge proceeding is pending. *See id.* § 3405(3).

Notably, the judicial proceeding for customer challenges that the RFPA establishes is, in a word, expeditious. *See Jerry T. O'Brien*, 467 U.S. at 745 ("[T]he statute is drafted in a fashion that minimizes the risk that customers' objections to subpoenas will delay or frustrate agency investigations."). If the customer's initial motion satisfies the procedural requirements set forth in 12 U.S.C. § 3410(a) and "presents a *prima facie* case of impropriety" with respect to the government's subpoena, *Hancock v. Marshall*, 86 F.R.D. 209, 211 (D.D.C. 1980), then the district court must order the government to file a response. *See* 12 U.S.C. § 3410(b). The government's response may be filed in camera if the government provides reasons for doing so, *see id.*, and may rely on affidavits or other summary-judgment-type evidence, *see Lerman v. SEC*, 928 F. Supp. 2d 798, 803–05 (S.D.N.Y. 2013). And once the government files its response, the Court must arrive at a final ruling on the motion "within seven calendar days[.]" 12 U.S.C. § 3410(b).

By statute, the court must deny a motion to quash an administrative subpoena, and must order enforcement of the subpoena, if the government shows that "there is a demonstrable reason to believe that the law enforcement inquiry is legitimate and a reasonable belief that the records sought are relevant to that inquiry[.]" *Id.* § 3410(c).

Conversely, the Court must grant the motion and quash the subpoena if "there is not a demonstrable reason to believe that the law enforcement inquiry is legitimate and a reasonable belief that the records sought are relevant to that inquiry," or if the government has not "substantial[ly] compli[ed]" with the procedural requirements of the RFPA. *Id.*; *see also Sandsend Fin. Consultants, Ltd. v. Fed. Home Loan Bank Bd.*, 878 F.2d 875, 882 (5th Cir. 1989) (noting that the "substantial compliance" requirement is a low bar that is satisfied if the bank customer "knew of the subpoena in time to challenge it"). The district court's analysis is limited to these considerations, and if the criteria for enforcement of a subpoena are met, then the court has no choice but to order that the subpoena be enforced. *See Sandsend*, 878 F.3d at 877 (noting "the narrowly circumscribed nature of the court's discretion under the RFPA").[1]

## II.

In the instant case, DOT-OIG has notified plaintiff Mondana Nicksolat that it intends to subpoena certain of Nicksolat's financial records from TD Bank. (*See* Subpoena, Ex. A to Mot. for Order to Quash Admin. Subpoena, ECF No. 1-1, at 1; Customer Notice, Ex. A to Mot. for Order to Quash Admin. Subpoena, ECF No. 1-1, at 6–7.)[2] The subpoena states that TD Bank would be required to produce, "[f]or the period June 2012 to present: all account information for Accounts [redacted] and [redacted] for Mondana Nicksolat (SSN: [redacted]) including but not limited to deposit

---

[1] Before granting a motion to quash under the RFPA, the court must also find that the movant "is the customer to whom the records sought by the Government authority pertain[.]" 12 U.S.C. § 3410(c); *see also id.* § 3410(a)(1) (requiring the movant to include this information in the sworn statement that must accompany the motion to quash). The parties do not dispute that the subpoenaed records in this case pertain to Nicksolat.

[2] Page-number citations to the documents that the parties have filed refer to the page numbers that the Court's electronic case filing system automatically assigns.

slips, withdrawals, monthly statements, signatory authority, and wire transfers."
(Addendum to Inspector Gen. Subpoena, Ex. A to Mot. for Order to Quash Admin.
Subpoena, ECF No. 1-1, at 4.)  In its notice to Nicksolat, DOT-OIG informed her that it
was seeking the subpoenaed records "[t]o determine if [she] received income from June
2012 to present, from any sources while accepting workers compensation benefits."
(Customer Notice at 6.)

Nicksolat filed a motion to quash the DOT-OIG administrative subpoena in this
Court on September 6, 2017, and that motion is now fully briefed.  (*See* Mot. for Order
to Quash Admin. Subpoena ("Mot."), ECF No. 1; *see also* Opp'n to Mot. ("Opp'n"),
ECF No. 6; Reply in Further Supp. of Mot. ("Reply"), ECF No. 7.)[3]  In her motion,
Nicksolat first argues that the purpose of the DOT-OIG subpoena, as articulated in the
notice that she received, provides no factual basis from which to conclude that the
subpoenaed records "are relevant to a legitimate 'law enforcement inquiry,' as defined
by RFPA."  (Mot. at 3.)  Nicksolat notes that DOT-OIG "has *not* made any accusation
or allegation that [she] has committed, engaged in, or participated in any violation of or
failure to comply with" the law, and she adds that "none of the subpoenaed records
described in the OIG Administrative Subpoena appear to have any relevance whatsoever
to any type of investigation or inquiry" because those records "pertain to two personal
checking accounts of Plaintiff['s.]"  (*Id.* at 3 (emphasis in original).)  Put another way,
in Nicksolat's view, "OIG has *not* characterized any transaction involving any of those

---

[3] Nicksolat's motion to quash is timely because it was filed within 14 days of August 23, 2017, the date that DOT-OIG mailed her the subpoena.  (*See* Customer Notice at 10.)  *See also* 12 U.S.C. § 3410(a) (setting the deadline for a motion to quash).  Because the government filed its opposition to Nicksolat's Motion on September 26, 2017 (*see* Opp'n), this Court is statutorily required to rule on Nicksolat's motion to quash on or before October 3, 3017, *see* 12 U.S.C. § 3410(b).

accounts as a suspected (or even possible) violation of any applicable law[.]" (*Id.* at 4 (emphasis in original).) Nicksolat also argues that the government's written notice to her fails to identify the law-enforcement inquiry at issue "with reasonable specificity[,]" as 12 U.S.C. § 3405(2) requires, because "[t]here is no claim that Plaintiff violated any particular law[,]" and the breadth of the records request suggests that it is "nothing more than a fishing expedition." (Mot. at 4.)

DOT-OIG's opposition provides further details about the investigation into Nicksolat and the government's interest in the financial records that are the subject of the administrative subpoena, drawing heavily from an attached declaration from the lead DOT-OIG agent working on the investigation. (*See* Opp'n at 1–2 (citing Decl. of Dennis Ocampo ("Ocampo Decl."), ECF No. 6-1).) DOT-OIG's declarant explains that, from 2000 until 2017, Nicksolat received workers' compensation benefits in connection with her employment at DOT-OIG due to a back injury. (*See* Ocampo Decl. ¶ 5.) Each year that she received benefits, Nicksolat was required to submit a form that "report[ed] all earnings from sources other than her employment with DOT-OIG" (*id.* ¶ 6), and according to the declaration, "DOT-OIG has reason to believe that Ms. Nicksolat received compensation from sources other than her workers' compensation benefit but failed to report it" on the annual form (*id.* ¶ 7). DOT-OIG is now conducting an investigation into this issue. (*See id.* ¶ 3.) DOT-OIG is seeking Nicksolat's bank records because it believes that "records from the two identified accounts may reflect deposits or other transactions reflective of compensation Ms. Nicksolat received from sources other than her workers' compensation benefit." (*Id.* ¶ 9.)

**III.**

Having considered the parties' filings, this Court concludes that the criteria for enforcement of DOT-OIG's administrative subpoena are easily satisfied. First, DOT-OIG has shown that there is a "demonstrable reason to believe that the law enforcement inquiry is legitimate[.]" 12 U.S.C. § 3410(c). DOT-OIG has supplied a sworn declaration in which the lead agent in Nicksolat's case represents that there is an ongoing investigation into whether Nicksolat made false statements about her income on a form that she was required to submit each year in connection with workers' compensation benefits that she received from the government. (*See* Ocampo Decl. ¶¶ 3, 6–7.) Nicksolat does not appear to challenge DOT-OIG's authority to conduct such an investigation, other than to note in passing that the notice that DOT-OIG provided to her "did not even recite [DOT-OIG's] statutory jurisdiction for such a broad and invasive inquiry." (Reply at 4.) Notwithstanding the government's failure to recite the statutory basis for its investigatory authority, this Court has little trouble concluding, based on the government's declaration, that "there is a demonstrable reason to believe" that DOT-OIG is conducting a legitimate investigation into the possibility that Nicksolat made false statements on forms that she was required to submit in connection with her workers' compensation benefits. 12 U.S.C. § 3410(c); *see Feiner v. SEC*, 914 F. Supp. 2d 474, 477 (S.D.N.Y. 2012) (concluding that an SEC administrative subpoena pertained to a legitimate law enforcement inquiry because the SEC was statutorily authorized to investigate such potential violations and the investigation was not "motivated by an illegitimate purpose"); *Grenda v. SEC*, Nos. 17-cv-536 & 17-cv-537, 2017 WL 4053821, at *3 (W.D.N.Y. Sept. 14, 2017) (holding that an SEC investigation

into an investment advisor's possible violation of a settlement agreement with the SEC "is a legitimate inquiry, plain and simple").

Second, DOT-OIG's "belief that the records sought are relevant to" its law enforcement inquiry is "reasonable[.]" 12 U.S.C. § 3410(c). The challenged administrative subpoena would require TD Bank to produce "all account information" for Mondana Nicksolat with respect to two identified bank accounts "[f]or the period June 2012 to present[,]" "including but not limited to deposit slips, withdrawals, monthly statements, signatory authority, and wire transfers." (Subpoena at 4.) The lead DOT-OIG agent working on Nicksolat's case avers in a sworn declaration that he "believe[s] that records from the two identified accounts may reflect deposits or other transactions reflective of compensation Ms. Nicksolat received from sources other than her workers' compensation benefit" (Ocampo Decl. ¶ 9), and this representation provides an entirely reasonable basis to believe that Nicksolat's personal bank account records are relevant to the investigation that DOT-OIG is conducting. *See* 12 U.S.C. § 3410(c); *see also Feiner*, 914 F. Supp. 2d at 477–78 (explaining that the investigating agency need not demonstrate the requested records *are* relevant to its investigation—it need only demonstrate that it has *a reasonable belief* that the records are relevant). Bank records are relevant to a government investigation for purposes of the RFPA if they "touch on a matter under investigation[,]" even if they "have only a loose connection" to the core of the inquiry. *Sandsend*, 878 F.2d at 882; *see also Grenda*, 2017 WL 4053821, at *2 (explaining that the RFPA does not use the word "relevant" in a "narrow, evidentiary sense" (internal quotation marks and citation omitted)). In this Court's view, Nicksolat's personal bank account records clearly qualify as relevant to

an investigation into potential fraudulent misrepresentations that she may have made about her income during the period under review; and indeed, her bank account records are the primary place one would look for evidence of income that Nicksolat failed to report on workers' compensation forms.

Nicksolat's contention that DOT-OIG's subpoena represents "nothing more than a fishing expedition" (Mot. at 4) misunderstands DOT-OIG's authority to conduct an investigation and to subpoena information relevant to its inquiry. A customer-challenge proceeding pursuant to the RFPA is not akin to an application for a warrant, in which context the government must demonstrate (usually to a magistrate) that there is probable cause to believe that a crime has been committed and that evidence of the crime will be found in the place to be searched. *See, e.g.*, *Illinois v. Gates*, 462 U.S. 213, 238–39 (1983). By contrast, the administrative subpoenas that the RFPA contemplates typically arise well before the government commences, or even decides to commence, a legal proceeding about specific allegations of impropriety based on evidence in the government's possession; therefore, "[w]hat need be shown is not probable cause, but a good reason to investigate." *Feiner*, 914 F. Supp. 2d at 478 (internal quotation marks and citation omitted). DOT-OIG has done more than enough in the instant case to demonstrate that there is reasonable cause to believe that Nicksolat's bank records are relevant to a legitimate law enforcement inquiry.

Finally, Nicksolat has failed to demonstrate "that there has not been substantial compliance with" the procedural requirements of the RFPA. 12 U.S.C. § 3410(c). Nicksolat's primary argument in this regard is that the notice that DOT-OIG mailed to her about the administrative subpoena failed to "describe[] the nature of the law

enforcement inquiry 'with reasonable specificity'" (Mot. at 4 (quoting 12 U.S.C.

§ 3405(2))), and she makes a secondary argument regarding the timeliness of the notice

that she received (*see* Mot. at 4–5 (citing 12 U.S.C. § 3405(2) and arguing that DOT-

OIG failed to serve her with the subpoena and notice on or before the date that the

subpoena was served on the bank)). DOT-OIG's assertion that it has yet to serve the

subpoena on the bank resolves the timeliness issue. (*See* Opp'n at 2 (citing Ocampo

Decl. ¶¶ 11–12, 15).) And with respect to Nicksolat's particularity concern (*see, e.g.*,

Mot. at 4 (arguing that the DOT-OIG's notice was insufficient because it contained "no

claim that [she] violated any particular law" and "no claim that the government has

evidence that [she] may have violated the law")), Nicksolat once again misperceives the

government's obligation when providing the requisite customer notice under the RFPA.

Consistent with the fact that administrative subpoenas under the RFPA often issue

during the pre-complaint phase of an investigation, the requisite notice need only "state

with reasonable specificity *the nature* of the law enforcement inquiry[,]" 12 U.S.C.

§ 3405(c) (emphasis added)—it need not set forth the specific provision of law that the

customer may have violated or detail the evidence that spurred the investigation.

Indeed, all that matters is that the customer be given notice of the thrust of the

government's investigation, such that she has the opportunity to file a motion to quash

that provides "a factual basis for concluding that there is no reason to believe that the

financial records being sought by the [government] contain information relevant to a

legitimate law enforcement purpose." *Hancock*, 86 F.R.D. at 211.

Here, DOT-OIG mailed a notice to Nicksolat that alerted her to the thrust of its

investigation by stating that DOT-OIG was seeking her bank account records in order

"[t]o determine if [she] received income from June 2012 to present, from any sources while accepting workers compensation benefits."  (Customer Notice at 6).  Nicksolat is mistaken to argue that DOT-OIG needed to do anything more in order to be in "substantial compliance" with its notice obligations.  *Id.* § 3410(c).[4]

## IV.

For the reasons explained above, the Court finds that "there is a demonstrable reason to believe that [DOT-OIG's] law enforcement inquiry is legitimate and a reasonable belief that the records sought are relevant to that inquiry[.]"  12 U.S.C. § 3410(c).  Furthermore, the Court concludes that Nicksolat has failed to demonstrate that "there has not been substantial compliance with" the requirements of the RFPA. *Id.*  Thus, it is hereby

**ORDERED** that Nicksolat's motion to quash (ECF No. 1) is **DENIED** and DOT-OIG may issue and enforce its administrative subpoena.


DATE:  October 3, 2017          *Ketanji Brown Jackson*
                                 KETANJI BROWN JACKSON
                                 United States District Judge

---

[4] In her reply brief, Nicksolat adds the distinct compliance-related argument that DOT-OIG's subpoena "does not 'reasonably describe' the financial records it seeks."  (Reply at 4 (quoting 12 U.S.C. § 3402).)  This argument did not appear in Nicksolat's motion, and in any event, it is clear to this Court that DOT-OIG's identification of the particular bank records it seeks is sufficient to comply with the requirement that any records sought in an administrative subpoena must be "reasonably described[.]" 12 U.S.C. § 3402.